```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

MALCOLM LOUIS LEBLANC, ET AL   *          CIVIL ACTION

VERSUS                         *          NO: 05-5485

CHEVRON USA INC., ET AL        *          SECTION: "D"(5)

## ORDER AND REASONS

Before the court is the **"Motion for Reconsideration" (Doc. No. 342)** filed by Defendants, Chevron U.S.A. Inc., formerly known as Gulf Oil Corporation, Exxon Mobil Corporation, El Paso Energy E.S.T. Company, as Trustee for EPEC Oil Liquidating Trust, Shell Oil Company, Mobil Corporation and Murphy Oil USA, Inc. In this motion, Defendants ask the court to reconsider its "Order and Reasons" (Doc. No. 341) which allow: (1) Drs. Gardner and Guidotti to give opinion testimony regarding general causation between benzene exposure and myelofibrosis and (2) Dr. Solanky to testify as a statistician.

Plaintiffs oppose the Motion for Reconsideration. The court heard oral argument from counsel on Thursday, November 12, 2009. Now, having considered the memoranda and argument of counsel, the

record, and the applicable law, the court grants Defendants' Motion for Reconsideration and finds that Defendants' **"Motion in Limine to Strike or, Alternatively, to Exclude the Affidavit and Testimony of Dr. Tumulesh Solanky and for Summary Judgment" (Doc. No. 292)**; and and Defendants' **"Motion in Limine to Strike Portions of Dr. Gardner's Affidavit or, Alternatively, to Exclude Dr. Gardner's Affidavit; to Exclude Dr. Guidotti's Unsworn Declaration; and for Summary Judgment" (Doc. No. 303)** should be granted.

## BACKGROUND

### I. The Tondel Report[1]

In the court's "Order and Reasons" (Doc. No 174, entered on June 18, 2007),[2] the court initially ruled that the Tondel report was "not a reliable source of scientific evidence upon which causal attribution can be based." (Doc. No. 174, p. 31).[3] However, in

---

[1] The Tondel Report is contained in the record as Doc. No. 326-15.

[2] Also reported at 513 F.Supp.2d 641 (E.D.La. 2007).

[3] In its "Order and Reasons" (Doc. No. 174), the court reviewed each and every other study Dr. Gardener relied on to support his general causation opinion and the court concluded that "there is insufficient valid and inadmissible scientific evidence (under *Daubert* and Federal Rule 702) to support Dr. Gardner's opinion..." (Doc. 175, p. 50).

Following the issuance of the court's "Order and Reasons" (Doc. No. 174) and Judgment (Doc. No. 177) dismissing Plaintiffs' case, the Fifth Circuit remanded the matter in light of the ATSDR's report that found benzene causes aplastic anemia. (*See* Fifth Circuit Mandate, Doc. No. 184, and the court's discussion of the procedural background of this case in the Court's Order and Reasons, Doc. No. 341 at pp. 2-8). In its most recent 'Order and Reasons," the court found that Plaintiff failed to submit evidence that is valid and admissible under *Daubert* and Federal Rule of Evidence 702 which would support a finding that myelofibrosis is a form of aplastic anemia. (Doc. No. 341, at pp. 9-17). The court also concluded that Plaintiff does not have aplastic anemia and has never been diagnosed with aplastic anemia. (*Id*. at p. 17-21). These findings regarding aplastic anemia remain unchanged.

2

its most recent "Order and Reasons" (Doc. No 341, entered on July 15, 2009), the court ruled that Drs. Gardner and Guidotti would be allowed to use the Tondel report, together with certain Shell document that came to light after remand from the Fifth Circuit, to give opinion testimony on the issue of general causation between benzene exposure and myelofibrosis.

In the **Motion for Reconsideration** presently before the court, Defendants first argue that in between the court's two rulings (contained in Docs. Nos. 174 and 341), "nothing has happened which could transform the Tondel report into reliable scientific evidence of a causal relationship between myelofibrosis and benzene exposure under *Daubert*." (Defendants' Supporting Memo., Doc. No. 342-2, at 3-4). Upon reconsideration, the court finds that Defendants are correct.

The Tondel report centers on <u>one</u> case report of a petrol station attendant was exposed to petrol fumes and diagnosed with myelofibrosis, and it cautions that: "[w]hen observing a single case in relation to a particular exposure, there is considerable doubt as to whether there is a causal connection or not." And while the report generally states that petrol station attendants are exposed to benzene and it notes earlier cases of benzene exposure and myelofibrosis, the Tondel report concludes that "[a] multi-centre study on this rare disease [myelofibrosis] and benzene

exposure seems warranted." Further, while the Tondel report generally discusses the levels of benzene exposure for petrol station attendants in the United States, Europe and Sweden, the Tondel report does not give direct information of the subject petrol station attendant's level of benzene exposure.

Finally, the information provided from the Swedish Cancer Environment Register does not provide consistent support of benzene exposure causing the subject petrol attendant's myelofibrosis because the Register found "no increased risk [of myelofibrosis] for petrol station attendants (0 cases vs. 0.33 expected)." The court concludes that, while the authors of the Tondel report suggest that benzene exposure is a risk factor for myelofibrosis, a suggestive link between a chemical exposure and a certain disease is not sufficiently reliable scientific evidence that comports with Federal Rules of Evidence 702 and 703 and *Daubert*. *Compare Allen v. Pennsylvania Engineering Group*, 102 F.3d 194 (5th Cir. 1996)(evidence which is only "suggestive" of a link between exposure to ethylene oxide and brain cancer was <u>not</u> "statistically significant" to support causation).

Accordingly, the court will not allow Drs. Gardner and Guidotti to give general causation testimony based on the Tondel report, particularly when as the court next discusses, there is no other scientifically reliable evidence that would support opinion

4

testimony on the issue of general causation between benzene exposure and myelofibrosis.[4]

## II. The "New" Shell Documents

The court also now finds, contrary to its ruling in "Order and Reasons" (Doc. No. 341), that the Shell Documents provided to Plaintiffs after remand from Fifth Circuit cannot serve as a basis for Plaintiffs' causation experts to opine on the issue of general causation between benzene exposure and myelofibrosis.

(1) The 1978 Task Force

This report states that: "the association of this condition [myelofibrosis] with benzene overexposure suggests a causal relationship." The "suggestion" of a causal relationship is this report does not constitute reliable scientific evidence under *Daubert*, and "surely" does not constitute "statistically significant" evidence under *Allen*, even if this document was prepared at Shell's request.

(2) Shell employee communication (setting forth findings of a mortality study involving the Wood River facility)

In sample questions and answers provided in this document, the "known" causes of myelofibrosis are listed, and benzene is not

---

[4] As the court next discusses, there is no other scientifically reliable evidence upon which Dr. Gardner relies to support his causation opinion. Further, other than the Tondel study, Dr. Guidotti insufficiently identifies any other reliable scientific evidence upon which he bases his opinion that benzene exposure causes myelofibrosis. (*Se* Guidotti Declaration, Doc. No. 303-6).

5

listed.) However, it is also stated that myelofibrosis "has been attributed" to high chemical exposures such as benzene, among others. Nevertheless, this document is an employee communication, and not a study of any kind, scientific, peer-reviewed, or otherwise. And while it states that hourly employees at the facility had a higher than expected rate of myelofibrosis and myelodysplasia in the 1980's, it specifically states "the reason for this increase is unknown." Thus, the court finds that this report does not constitute reliable scientific evidence establishing a causal relationship between myelofibrosis and benzene e exposure.

(3) the unpublished Delzell report (pertaining to the Wood River facility)

In this report, the authors noted that hourly workers at the facility had a statistically significant higher number of deaths from myelofibrosis and myelodysplasia, but that the reason for the increase was unknown. Thus, that this study cannot constitute reliable scientific evidence establishing a causal relationship between those diseases and benzene exposure.

### III. Dr. Solanky's Meta-Analysis

In its Order & Reasons (Doc. No. 341), the court ruled that Dr. Solanky would not be allowed to testify regarding **general causation**, but that he would be allowed to testify (as a

6

statistician) regarding his **meta-analysis**. However, the court had previously found that 4 of 6 of the studies underlying Dr. Solanky's meta-analysis (namely, Rushton/Alderson, Kaplan, Arnetz, and Honda) did not constitute reliable scientific evidence. (*See* Order and Reasons, Doc. No. 174, pp. 24, 26, 34, 42-43). These findings remain unchanged.

The 5th study in Dr. Solanky's meta-analysis is the Delzell report, which is the unpublished version of the published Honda study. Although Plaintiffs argue that the Delzell report contains eight cases of myelofibrosis as opposed to the Honda report which contains only four cases of myelofibrosis, in both reports there is no sufficient causal link between benzene exposure and myelofibrosis. Finally, the 6th study used in Dr. Solanky's meta-analysis is the Hanis study involving workers at Exxon's refinery in Baton Rouge, Louisiana, with three observed deaths from myelofibrosis. However, like all the other studies on which Dr. Solanky relies, the Hanis report does not assess causation between benzene exposure and myelofibrosis.

Thus, the court now concludes that neither Dr. Solanky nor Dr. Gardner will be allowed to testify regarding Dr. Solanky's meta-analysis because the underlying studies do not show a statistically significant link between benzene exposure and myelofibrosis. Further, even if Dr. Solanky (who is not an epidemiologist, but a

7

statistician) would be allowed to testify that based on his meta-analysis, Mr. LeBlanc did not contract myelofibrosis "by chance alone," such testimony would be insufficient to allow a reasonable juror to conclude that it is "more likely than not" that Mr. LeBlanc's myelofibrosis was caused by benzene exposure. *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 578, 596 (1993).

Accordingly;

**IT IS ORDERED** that to the extent that the court denied Defendants' **"Motion in Limine to Strike or, Alternatively, to Exclude the Affidavit and Testimony of Dr. Tumulesh Solanky and for Summary Judgment" (Doc. No. 292)** and Defendants' **"Motion in Limine to Strike Portions of Dr. Gardner's Affidavit or, Alternatively, to Exclude Dr. Gardner's Affidavit; to Exclude Dr. Guidotti's Unsworn Declaration; and for Summary Judgment" (Doc. No. 303)** in its "Order and Reasons" (Doc. No. 341), the court **VACATES** that "Order and Reasons;"[5] and

**IT IS FURTHER ORDERED** that Defendants' **"Motion in Limine to Strike or, Alternatively, to Exclude the Affidavit and Testimony of Dr. Tumulesh Solanky and for Summary Judgment" (Doc. No. 292)** and Defendants' **"Motion in Limine to Strike Portions of Dr. Gardner's**

---

[5] The rulings in the "Order and Reasons" (Doc. No. 341) which address the issues pertaining to aplastic anemia remain unchanged.

**Affidavit or, Alternatively, to Exclude Dr. Gardner's Affidavit; to Exclude Dr. Guidotti's Unsworn Declaration; and for Summary Judgment" (Doc. No. 303)** be and are hereby **GRANTED**, thereby dismissing Plaintiffs' claims and entitling Defendants to Judgment as a matter of law.

New Orleans, Louisiana, this **13th** day of **November**, **2009**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE